Nicholson, C. J.,
delivered the opinion of the Court.
This is a bill to enjoin the collection of a judgment, rendered on the 16th of September, 1862, by a Justice of the Peace, for Cannon County, on a note for one hundred and fifty dollars. Complainant, being about to enter the cavalry service of the Confederate States, purchased of one of the defendants, a horse, to be used in that service. The proof is abundant that the horse was purchased for that purpose, and that complainant was fully cognizant of the object of the defendant in making the purchase. Complainant required the defendant to *69 give bis note, witb two sureties, for one hundred and fifty dollars, which was the full value of the horse.
This note was sued on before a Justice of the Peace, when the payor and his sureties suffered judgment to be rendered without making any defense. Execution issued and was levied on the land of one of the defendants, and upon its being condemned for sale this bill was filed,, making substantially the allegations recited, and an injunction was granted to stop the sale. The defendants submit to the jurisdiction and answer the several allegations of the bill with a good deal of evasion, such as denying positively that a horse was sold, to be used ‘in the Confederate service, but admitting a mare was sold; but insisting that she was not fit for the cavalry service; and denying that the consideration of the note was illegal.
The proof, as already stated, fully establishes the fact that complainant bought the mare for the purpose of using her in the Confederate cavalry service, and that she was so used, and that the defendant knew the purpose for which she was bought. But the proof fails to show that the defendant’s object in selling was to promote the Confederate cause. He sold for a full price, exacted two sureties to the note, and most probably was looking only to his own interest, and not to that of the Confederacy, in making the sale.
That such a contract was not illegal on the part of the defendant, was decided by this Court at its recent term, in the case of Naff v. Crawford, 1 Heiskell’s R., 116. The rule laid down in that case is, “that the agreement must be to do, or to further, some illegal or immoral *70 purpose in violation of public policy. The element that destroys the validity of the agreement is the purpose, by the agreement to effect or aid the forbidden end, or else the consideration for the promise must have been to do and perform an illegal or immoral act.” The proof discloses no such element in the contract on the part of the defendant. He did not agree to sell the horse in consideration that complainant would use him in the Confederate service, but in consideration that complainant would give to him his note for $150 with two securities. The rule which governs the case is aptly illustrated by Mr. Story in his work on Contracts, vol. 1, § 541, in which he says: “So also, a lease of lodgings for the purpose of prostitution, is void. But the mere fact that the person to whom the board or lodging or any articles are furnished, is a prostitute, does not invalidate the contract therefor, unless the very object of the agreement be to pander to her prostitution.” Aft we do not think the proof shows the object of the défendant to have been to aid the rebellion, but simply to convert his mare into a good note for his private purpose, we hold that the bare knowledge on the part of the defendant- that complainant intended to make an illegal use of the horse, does not vitiate the note.
The decree below is affirmed, with costs.